## TEMPLE EASTEX INCORPORATED, Appellant,

v.

## C.S. BUSBY and Wife, Alice Marie Busby, Appellees.

No. 09 84 289 CV.

Court of Appeals of Texas, Beaumont.

June 27, 1985.

Rehearing Denied Aug. 28, 1985.

Robert G. Osborn, Lufkin, for appellant.

Sam E. Dunn, Orange, for appellees.

## OPINION

BURGESS, Justice.

■ This is a Trespass to Try Title case. Temple-Eastex, as record owner, brought suit against C.S. Busby and wife Alice Marie Busby and H.A. Davison for title and possession of an approximate 33.7 acre tract of land in Newton County, Texas. Mr. Davison executed a disclaimer, the actions were severed and a judgment entered against him. A jury trial proceeded against the Busbys. Mr. and Mrs. Busby pleaded and proved, to the jury's satisfaction, their claim of adverse possession under *TEX.REV.CIV.STAT.ANN. art. 5510* (Vernon 1958), more commonly referred to as the ten-year limitation statute. Judgment was entered on the jury's verdict and Temple-Eastex brings forth six points of error.

Point of error number one avers the trial court erred in that there was no evidence to support the finding that the Busby's had satisfied the requirement of ten years of adverse possession. This contention is based upon the Busbys having obtained a temporary restraining order against Temple-Eastex's predecessor in title and thus suspending the running of the ten year limitation period.

Mr. and Mrs. Busby received a deed purporting to convey to them the 33.7 acres on July 30, 1968. Sometime thereafter, Mr. Busby entered into an oral lease agreement with Mr. Davison whereby Mr. Davison could use the land for grazing purposes and in return would take care of the property and see that no one went on the property. In 1969, Mr. and Mrs. Busby became aware that someone had removed a portion of their fence, entered the land and begin to remove the timber. They filed a suit against Eastex Incorporated, Temple-Eastex's predecessor in title, and obtained a temporary restraining order on October 21, 1969, restraining Eastex from interfering with the Busby's peaceful use, possession and enjoyment of the land. Thereafter, on October 30, 1969, Eastex's attorneys requested the hearing on the application for a temporary injunction be postponed and reset. The trial court entered an order continuing the temporary restraining orders in effect until the application for a temporary injunction was heard. No further hearings were held and the Busbys took a non-suit on January 11, 1974. Temple-Eastex takes the position that the period from the granting of the temporary restraining order until the non-suit should be excluded from the ten-year limitation period as a matter of law and thus the Busbys could not have satisfied the ten-year requirement. If the period should be excluded, Temple-Eastex is correct, because there would be only nine years and 286 days from the date the Busbys are claiming possession until the filing of the suit by Temple-Eastex.

Both parties cite *Gibbs v. Lester*, 41 S.W.2d 28 (Tex. Comm'n App.1931, judgmt adopted) as being supportive of their positions. Temple-Eastex brings forth *Gibbs, supra*, for the general proposition:

"Where the character of legal proceedings is such that the law restrains one of the parties from exercising a legal remedy against another, the running of the statute of limitations applicable to the remedy is postponed, or, if it has com-

menced to run, is suspended, during the time the restraint incident to the proceeding continues."

"If a party commences legal proceedings, the character of which is such that the law restrained one of the parties from exercising the legal remedy against another, common justice demands that these legal proceedings being of such character, should not have the legal effect to protect the person who commenced them, and thereby prevent his adversary from exercising his legal remedy against him."

They allege that the Busbys' prior suit judicially prevented Eastex from exercising its legal right, as record owner, to enter the land or utilize the land jointly, which would have interrupted the running of the ten-year period. The Busbys bring forth *Gibbs, supra,* for its specific holdings. As stated:

One may also acquire a title by limitation, under the ten-year statute, by having peaceable and adverse possession of a tract of land described by an instrument of writing, properly recorded, cultivating, using, and enjoying the same for ten years. In order to stop the running of the statute of limitation, and interrupt the peaceable and adverse possession mentioned in the statute, the suit not only must be to recover "the estate," but it must be an adverse suit. That is to say, a suit by some one claiming adversely to the person who, being in possession of the property, is claiming a title under the statute of limitations. Such a suit, as is mentioned in article 5514, must not only be "adverse" to the parties claiming the title under the statutes of limitation, that is, conflicting, antagonistic and hostile, to such person, but such suit must be duly prosecuted to final judgment. [citations omitted] While the limitation is interrupted by suit, an abandonment of the suit will have the same effect as if the suit had never been instituted.

In our instance, the Busbys' suit in 1969, was neither adverse to one claiming under adverse possession nor was it prosecuted to final judgment. See *Dalo v. Laughlin,* 636 S.W.2d 585 (Tex.App.—San Antonio 1982, no writ). We find the specific holdings in *Gibbs, supra,* to be persuasive and overrule point of error number one.

Points of error numbers two through five question the sufficiency of the evidence as to the jury's finding that the Busbys had held exclusive, peaceable and adverse possession of the land continuously cultivating, using or enjoying it for a period of ten years prior to the filing of the suit by Temple-Eastex. In this regard, the jury was properly instructed as to "adverse possession", "claim of right", "hostile", "peaceable possession", "exclusive possession" and the requirement that in order for granting to constitute adverse possession the land must be enclosed by fences capable of turning livestock of ordinary disposition.

The evidence showed that the Busbys never actually used or cultivated the land, but all of their use was through their lessee, Mr. Davison. The testimony showed that shortly after July 30, 1968, Mr. Busby, with the help of Mr. Davison's sons, completely enclosed the 33.7 acre tract by erecting fences on the northern and eastern boundaries. Fences on the western and southern boundaries were previously erected by other land owners. Thereafter, Mr. Davison began to "run" about twenty head of horses on the land. In 1969, Mr. Davison began to run cattle on the land and did so until he sold them in 1979. He further testified he put goats on the land after he sold cattle in 1979. Mr. Davison had a hog pen on the land and raised hogs all during the period in question and up until trial. In addition, he had constructed some cow feeders, a little shed to put minerals out for the animals, a salt lick and a shed to feed the horses. Mr. Davison also testified he had placed an old school bus on the property so his sons could camp in it and he could store feed. Mr. Davison testified that after the land was fenced in 1968, the northern fence had been disturbed twice, once in 1969, and once later. The fence had been replaced in 1969, but had

not been later because he had leased the adjoining land from a third party and it was not necessary to restrict the movement of the cattle.

There was some dispute as to when the fences had been erected and as to their ability to turn back cattle.

It is true that a mere casual enclosure will not suffice nor will grazing without a designed enclosure, *McDonnold v. Weinacht*, 465 S.W.2d 136 (Tex.1971). This is not the Busbys' case. Here, the land was specifically enclosed for the purpose of grazing. In addition, Mr. Davison, as the lessee of Mr. Busby, satisfied the requirements of the ten year statute. See *Cook v. Winter*, 207 S.W.2d 145 (Tex.Civ.App.—Amarillo 1947, writ ref'd n.r.e.)

Temple-Eastex urges one final attack on the lack of evidence of Mr. Davison's use of the land for a ten-year period. Because the northern fence line was not replaced after the second time it had been removed and Davison allowed his cattle to graze both the 33.7 tract and his leased property, Temple-Eastex categorizes this as casual grazing of the 33.7 acre tract. They would have us adopt an analogous rule to that announced in *Welch v. Mathews*, 642 S.W.2d 829 (Tex.App.—Tyler 1982, no writ). This rule states:

> "The courts have repeatedly taken the stance that when one enters into possession of land under a deed his possession is referable to the deed and in order to acquire title by adverse possession of additional land outside the boundaries of his conveyance, he must have actual possession of such additional land of such character as will give notice of adverse possession and mature into title after the statutory period."

But their analogy fails. The use of the 33.7 acres by Mr. Davison was of such a character to give notice of adverse possession. In fact, the suit for the temporary injunction by Mr. and Mrs. Busby in 1969, was the ultimate notice of adverse possession. Points of error numbers two and five are overruled.

Point of error number six complains of the trial judge excluding Davison's disclaimer. Temple-Eastex sought to introduce the disclaimer as an admission inconsistent with and contrary to Mr. Davison's testimony and for impeachment purposes. The disclaimer stated:

### DISCLAIMER OF H.A. DAVISON

H.A. Davison, one of the defendants in this cause of action, neither owns, claims, nor asserts any right, title, interest or right of possession in or to the premises described in the plaintiff's original petition, and says that as far as he is concerned the plaintiff has all right, title, interest and right of possession to the premises. Therefore, the defendant H.A. Davison enters his disclaimer, and prays that no costs be adjudged against him.

/s/ H.A. Davison

H.A. Davison

Nowhere in Mr. Davison's testimony did he assert any interest in the land other than the leasehold from Mr. Busby. At no time did Mr. Davison express an opinion as to which party had the right, title, interest and right of possession of the land. Mr. Davison simply testified to facts concerning his use of the land and the fencing of the land. Thus, there was nothing inconsistent between his testimony and the disclaimer. The trial court did not err in this regard. Point of error number six is overruled. The judgment of the trial court is affirmed.

AFFIRMED.